UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALFRED EUGENE OSLEY,                              Case No. 12-12279

              Plaintiff,                          Julian Abele Cook, Jr.
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                 Michael Hluchaniuk
                                                 United States Magistrate Judge
              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 16)**

I.   **PROCEDURAL HISTORY**

    A.   **Proceedings in this Court**

On May 24, 2012, plaintiff Alfred Eugene Osley, acting *pro se*, filed the

instant suit seeking judicial review of the Commissioner's unfavorable decision

disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local

Rule 72.1(b)(3), District Judge Julian Abele Cook, Jr. referred this matter to the

undersigned for the purpose of reviewing the Commissioner's decision denying

plaintiff's claim for a period of supplemental security income benefits.  (Dkt. 4).

This matter is before the Court on cross-motions for summary judgment.  (Dkt. 11,

16).

1

### B.    Administrative Proceedings

Plaintiff filed the instant claim for supplemental security income benefits on November 30, 2008, alleging that he became disabled on January 17, 2008.  (Dkt. 9-5, Pg ID 220-23).[1]  The claim was initially disapproved by the Commissioner on April 7, 2009.  (Dkt. 9-3, Pg ID 165).  Plaintiff requested a hearing and on December 6, 2010, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Steven H. Templin, who considered the case de novo.  (Dkt. 9-2, Pg ID 117-62).  In a decision dated January 4, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 9-2, Pg ID 98-112).  Plaintiff requested a review of this decision on February 2, 2011.  (Dkt. 9-2, Pg ID 95).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on March 30, 2012, denied plaintiff's request for review.  (Dkt. 9-2, Pg ID 90-92); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED**

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits.  20 C.F.R. § 416.335; *see Kelley v. Comm'r of Soc. Sec.*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Soc. Sec. Admin.*, 100 Fed. Appx. 502, 504 (6th Cir. 2004).  The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus, December 2008 is plaintiff's earliest possible entitlement to SSI benefits.

pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1968 and was 40 years of age on the alleged disability onset date and 42 years old at the time of the administrative hearing. (Dkt. 9-2, Pg ID 121). Plaintiff has a very limited relevant work history as a general laborer and as a meat packing cutter, holding the jobs for less than three months and not working since 2001 due to a right hand injury. (Dkt. 9-2, Pg ID 156-57; Dkt. 9-6, Pg ID 280). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Dkt. 9-2, Pg ID 104). At step two, the ALJ found that plaintiff has at least one medically determinable severe impairment, or its equivalent. (Dkt. 9-2, Pg ID 104-05). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 9-2, Pg ID 106). The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform a range of unskilled, light level work, with no more than brief and superficial contact with supervisors, co-workers or members of the public, the ability to understand, remember and carry out simple tasks on a sustained basis, and avoiding work that requires significant reading.

(Dkt. 9-2, Pg ID 109-10, 157).  At step four, the ALJ found that plaintiff was

without any past relevant work history.  (Dkt. 9-2, Pg ID 110).  At step five, the

ALJ denied plaintiff benefits because plaintiff could perform a significant number

of jobs available in the national economy.  (Dkt. 9-2, Pg ID 111).

### B.    Plaintiff's Claims of Error

Plaintiff, appearing *pro se*, asserts a variety of arguments in support of his

motion for summary judgment.  The undersigned notes, however, that the majority

of plaintiff's brief consists of excerpts of arguments apparently taken from other

briefs and which do not have any connection or application to plaintiff's claim for

supplemental security income benefits at issue here.  Accordingly, the undersigned

will focus on and discuss those arguments relevant to this matter.  Plaintiff argues

that the ALJ, in making his finding at step two of the sequential analysis that

plaintiff has at least one medically determinable "severe" impairment, implied that

plaintiff is less than credible in describing his impairments and improperly noted

plaintiff's criminal history and that plaintiff has a history of drug trafficking, and

therefore demonstrated a bias against plaintiff.

Plaintiff also argues that the ALJ's finding at step three that plaintiff's

impairments do not meet or equal a listing is flawed because the ALJ "substitutes

his opinion over medical professionals and the part B criteria listings" and "[t]here

is no legal rationale for an unfavorable decision here or for contradicting the

4

medical diagnosis." Plaintiff further contends that the ALJ "oversteps the bounds of this office" when he determined that plaintiff had the residual functional capacity to perform a range of unskilled, light work. Finally, plaintiff generally argues that the ALJ's decision is not supported by substantial evidence, that the ALJ failed to give proper weight to plaintiff's treating physicians' opinions, and that the ALJ improperly evaluated plaintiff's credibility. However, as discussed above, these arguments appear merely to have been cut and pasted from other briefs.

### B.    Commissioner's Motion for Summary Judgment

The Commissioner notes that plaintiff's brief "is a pastiche of various arguments, many of them apparently taken from other briefs." The Commissioner then goes on to argue that the Commissioner's decision is supported by substantial evidence. According to the Commissioner, plaintiff's main impairment is Poland's syndrome, a congenital disease characterized by underdevelopment or absence of the chest muscle on one side, which resulted in plaintiff missing muscles on the right side of his chest. A March 2007 consultative examination of plaintiff by Dr. Bina Shaw, M.D., noted a loss of muscle mass over the right anterior chest wall but symmetrical shoulder contour, full range of motion of the spine, knees, hips, ankles, shoulders, elbows and wrists, no limping, muscle power of 5/5 in all extremities, and the examiner noted no functional limitations. (Dkt. 9-7, Pg ID

282-88).  Plaintiff could get on and off the examination table without assistance

and complained of difficulty lifting very heavy weights, but admitted to an ability

to lift up to 15 to 20 pounds at a time.  (*Id.*).  A second consultative examination

performed in January 2009 by Dr. Jai K. Prasad, M.D., showed reduced strength in

the right hand and some reductions in lumbar and right shoulder range of motion,

but otherwise normal ranges of motion in the cervical spine, elbows, hips, knees,

ankles, wrists and hands.  (Dkt. 9-7, Pg ID 327-32).  Dr. Prasad opined that

plaintiff could do light work with his hands and with his arms.  (*Id.*).   The

Commissioner argues that the ALJ also noted found that plaintiff could prepare

food and do laundry, that he had worked as a librarian and porter while in prison,

and that while he now complained of pain due to Poland's syndrome, there is little

evidence or documentation of this in the medical records, which focused instead on

hypertension (controlled) and gastric reflux disease.  (Dkt. 9-2, Pg ID 106-07).

Thus, the Commissioner contends, the ALJ reasonably concluded that plaintiff

could do a reduced range of light work.

Further, the vocational expert testified upon questioning by plaintiff's

attorney that the work of escort vehicle driver (DOT code 919.663-022) could be

done by an individual who could only use one arm.  Thus, even if plaintiff's

Poland's syndrome rendered one of his upper extremities useless (as he contends),

there was still work available in the national economy that plaintiff could perform.

The Commissioner also argues, with respect to plaintiff's mental condition, that the ALJ properly found that plaintiff retained the mental capacity to do unskilled work involving simple instructions as long as he avoided jobs requiring significant reading or more than brief and superficial contact with others.  The ALJ noted that plaintiff had completed six credit hours of education at a community college and was currently taking three classes and maintaining a GPA of 2.5.  (Dkt. 9-2, Pg ID 106).  The ALJ also noted that plaintiff's prison records do not document mental health treatment, despite plaintiff's claims to the contrary (Dkt. 9-2, Pg ID 108), and commented that it was "interesting[]" that plaintiff did not seek outpatient mental health treatment until October 2009, but that he complained of hallucinations and paranoia at that time.  (Dkt. 9-2, Pg ID 108-09).  Further, plaintiff's testimony was vague as it concerned his treatment history.  (Dkt. 9-2, Pg ID 109).  The Commissioner further contends that the record shows that plaintiff experienced a "huge improvement" in his mental condition by January 2010 when taking his medications, that he was repeatedly described as asymptomatic until June 2010, when he had not been taking his medication for a month and had regularly been smoking marijuana, and that after he restarted his medications, his condition improved.  (Dkt. 9-2, Pg ID 109; Dkt. 9-8, Pg ID 370, 376, 386, 408).

The Commissioner then briefly addressed plaintiff's remaining arguments, explaining that many of them appear to have been cut and pasted from other briefs

despite their lack of relevance to this matter, including plaintiff's arguments regarding: evidence first presented to the Appeals Council (there was none here); Listing 1.04(A), which applies to disorders of the spine (and plaintiff does not claim a back disorder); treating physician opinion (although plaintiff does not clearly identify any doctor who was a treating physician or what testimony was overlooked); there was a conflict between the Dictionary of Occupational Titles ("DOT") and the vocational expert's testimony (but fails to identify any conflict); evidence was improperly referenced (but only referring to exhibits and documents not in the record in this case); and the ALJ improperly assessed plaintiff's credibility (only referring to facts not contained in this record).  Thus, the Commissioner argues, the decision of the Commissioner should be affirmed.

### D.   Plaintiff's Response to Commissioner's Motion for Summary Judgment

Plaintiff responds that neither his criminal history nor his earnings are relevant to an SSI determination, other than to create a "bias[ed] atmosphere that says since he was in and out of prison he does not need or deserve SSI."  Plaintiff also argues that the ALJ's RFC finding is insufficient to account for his functional limitations of "a one arm man with deep social and psychological problems." According to plaintiff, his Poland's syndrome causes him severe pain and consequently he is taking strong pain medications and cannot work.  Plaintiff further contends that the ALJ failed to consider plaintiff's psychological

8

disabilities when rendering his opinion that plaintiff is not disabled.  Plaintiff states that he has been diagnosed with Bipolar syndrome, anxiety and panic attacks, and takes several medications, and this, combined with his Poland's syndrome and pain medications, renders him disabled.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

10

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

11

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

12

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the

13

> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where

14

substantial evidence supports the ALJ's decision, it must be upheld.

### C.      Analysis and Conclusion

Although plaintiff was represented by counsel during the administrative proceedings, he commenced the instant action *pro se* and continues to represent himself.  Plaintiff fails to identify any specific evidence that the ALJ did not consider or that he mischaracterized that would require an alternative outcome in this matter.  Such a lack of detail in most cases would end the Court's inquiry. *Kennedy v. Comm'r of Soc. Sec.*, 87 Fed. Appx. 464, 466 (6th Cir. 2003) ("[I]ssues which are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and citation omitted)).  However, the pleadings of a *pro se* litigant are to be liberally construed.  *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard").  Further, in Social Security cases, the failure to submit a brief or full blown legal arguments "[are] not a prerequisite to the Court's reaching a decision on the merits" or a finding, *sua sponte*, that grounds exists for reversal.  *Reed v. Comm'r of Soc. Sec.*, 2012 WL 6763912, at *5 (E.D. Mich. Nov. 27, 2012) (citing *Wright v. Comm'r of Soc. Sec.*, 2010 WL 5420990, at *1-3 (E.D. Mich. Dec. 27, 2010)), *adopted by* 2013 WL 53855 (E.D. Mich. Jan. 3, 2013); *see also Buhl v.*

*Comm'r of Soc. Sec.*, 2013 WL 878772, at *7 n.5 (E.D. Mich. Feb. 13, 2013)

(plaintiff's failure to raise argument did not prevent the Court from identifying

error based on its own review of the record and ruling accordingly), *adopted by*

2013 WL 878918 (E.D. Mich. Mar. 8, 2013).  Because plaintiff is appearing before

this Court *pro se*, the Court has made an independent review of the record, as

explained below.

> ### 1.    The ALJ reasonably evaluated plaintiff's mental and physical impairments at step two

Plaintiff seeks review of the ALJ's finding that plaintiff has at least one

medically determinable "severe" impairment at step two of the sequential

evaluation.  The ALJ noted that plaintiff had established the threshold requirement

of a "severe" physical impairment, and the ALJ further found, contrary to the

mental health consultant, that plaintiff's cognitive, affective and characterological

disorders have also resulted in "severe" mental impairments.  (Dkt. 9-2, Pg ID 104-

05).  Thus, the ALJ did find plaintiff's claimed impairments were "severe" at step

two of the sequential analysis and plaintiff's claim of error should be denied.

However, even if the ALJ did fail to find one of plaintiff's claimed

impairments was "severe," the omission of an impairment from the step two

findings would not warrant remand because the ALJ found that plaintiff had at

least one impairment that met the criteria for severity at step two, and thus

proceeded to step three in the sequential analysis.  *See Maziarz v. Sec'y of Health*

*& Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that because the Secretary had found at least one other "severe" limitation, the severity of Maziarz's cervical condition was irrelevant for the step two analysis). If a claimant has more than one impairment, the ALJ must consider all medically determinable impairments when assessing the RFC, including those that are not severe. 20 C.F.R. § 404.1545(a)(3); *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007) (noting that once the ALJ determines at least one severe impairment, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). As shown below, the ALJ here considered plaintiff's claimed impairments in evaluating plaintiff's residual functional capacity, and thus even if the ALJ failed to find that a condition was "severe," that failure cannot be grounds for remand. *See Pompa v. Comm'r of Soc. Sec.*, 73 Fed. Appx. 801, 803 (6th Cir. 2003) (a step two omission is of "little consequence," provided that the ALJ considered "all impairments, severe and nonsevere," in crafting the RFC).

## 2.     Plaintiff's credibility

Plaintiff main complaint appears to be that the ALJ improperly assessed his credibility by referring to his criminal history.  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers*, 486 F.3d at 247.  The ALJ stated that he "credit[ed] a number of [plaintiff's] allegations concerning his symptoms and associated functional limitations related to his established impairments, but not the frequency and duration of intense symptoms associated with them."  (Dkt. 9-2, Pg ID 110).  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."  *Walters*, 127 F.3d at 531.

Plaintiff complains that the ALJ's references to his criminal history demonstrates bias against him because his criminal history is not relevant to the ALJ's disability determination.  While plaintiff's criminal history is not directly relevant to the issue of disability, it is relevant for other reasons, such as plaintiff's credibility.  *See Adams v. Comm'r of Soc. Sec.*, 2011 WL 2650688, at *1 (W.D. Mich. July 6, 2011) (collecting cases holding the ALJ properly considered claimant's criminal history in assessing his credibility) (citations omitted).  While the ALJ did mention the duration and nature of plaintiff's criminal history, at no point did the ALJ intimate that plaintiff's criminal history alone was determinative

18

of his credibility or disability.  The ALJ mentioned that plaintiff had a history of

drug trafficking, but noted that the record does not demonstrate any impairment

due to any substance abuse disorder and that plaintiff does not allege any

impairment due to any substance abuse disorder.  (Dkt. 9-2, Pg ID 105).  The ALJ

further noted plaintiff's inconsistent statements regarding his mental health

treatment and his drug use and the absence of mental health interventions prior to

October 2009, when he was referred to Team Mental Health Services by his

counselor at Elmhurst Home, a transitional housing program.  (Dkt. 9-2, Pg ID

108-09).  This was proper.  *See e.g., Hyson v. Comm'r of Soc. Sec.*, 2013 WL

2456378, at *19 (S.D. Ohio June 5, 2013) (the ALJ can consider a claimant's

substance abuse as evidence regarding the credibility of his subjective complaints)

(citing *Doepke v. Comm'r of Soc. Sec.*, 2010 WL 3119905 at *10 (M.D. Fla. 2010),

*aff'd*, 422 Fed. Appx. 834 (11th Cir. 2011)).  The ALJ also discussed plaintiff's

treatment records with the Michigan Department of Corrections, noting that they

do not describe any complaints or limitations related to plaintiff's right upper

extremity and no symptoms of muscle weakness, and that plaintiff had performed

librarian duties and porter duties while incarcerated, which is consistent with "light

duty" work.  (Dkt. 9-2, Pg ID 106-07).  This too was proper.  In fact, despite

plaintiff's past, the ALJ's decision focused on the other evidence in the record and

contained only necessary and relevant references to plaintiff's past convictions**.**

19

*See Clemons v. Astrue*, 2011 WL 2175599, at *1 (S.D. Ohio June 3, 2011) ("it was not improper for the [ALJ] to consider plaintiff's prior criminal history and his limited work history prior to his alleged onset date"). *Harris v. Comm'r of Soc. Sec.*, 2010 WL 703070 (N.D. Ohio Feb. 23, 2010) ("Plaintiff's criminal history, adequately documented in the record, was a legitimate consideration in evaluating her credibility.") (citation omitted); *see also Netter v. Astrue*, 272 Fed. Appx. 54, 55 (2d Cir. 2008) (noting that claimant had cited "no controlling legal authority for the proposition that [consideration of a claimant's criminal history] are impermissible considerations"). Thus, the undersigned finds that the Commissioner's credibility determination is supported by substantial evidence.

### 3.    Lack of state agency medical expert opinion evidence at step three of the sequential analysis warrants a remand

According to plaintiff, the ALJ erred when he rendered a step three determination that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. In this case, the single-decision maker (SDM) model was used pursuant to 20 C.F.R. § 404.906(b)(2). This regulation provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants. The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan. *See Leverette*

*v. Comm'r of Soc. Sec.*, 2011 WL 4062380 (E.D. Mich. Aug. 17, 2011), *adopted by* 2011 WL 4062047 (E.D. Mich. Sept. 13, 2011). This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing. *Id*. Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants. *Id*. (citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2)). The Programs Operations Manual System ("POMS") requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM *because SDM-completed forms are not opinion evidence at the appeal levels*." POMS DI § 24510.05 (emphasis added).

In this case, plaintiff's physical impairments were evaluated by two different SDMs–Tashia Toney in March 2007 and Jeffrey Brooks in April 2009–both of whom concluded that plaintiff could lift up to 20 pounds and stand and/or walk and sit about six hours in an eight-hour workday, with unlimited ability to push and/or pull. (Dkt. 9-7, Pg ID 289-96, 354-61). Even though plaintiff underwent two different consultative physical examinations–first on March 16, 2007 by Dr. Shaw, who concluded that plaintiff was unlimited in his activities of daily living, and second on January 21, 2009 by Dr. Prasad, who concluded plaintiff could do light work with his hands and arms–those physicians did not complete or review and

sign a "Disability Determination Transmittal" form or a "Physical Residual Functional Capacity Assessment" ("PFRCA") for plaintiff.  Rather, only the SDMs completed and signed those forms.  (Dkt. 9-3, Pg ID 164-65; Dkt. 9-7, Pg ID 289-96, 354-61).  The ALJ here expressly relied on the opinions of the SDMs in reaching his finding that "[e]ven in combination, the [plaintiff's] physical and mental impairments have not met or equaled the criteria of any Listing."  (Dkt. 9-2, Pg ID 106).  More importantly, the ALJ improperly indicated that the SDMs, Ms. Toney, and Mr. Brooks were physicians, stating that the step three finding "is implicit in the opinions of *the reviewing physician consultants* to the DDS in the current and prior claims," and citing directly to the PFRCAs completed by those SDMs.  (Dkt. 9-2, Pg ID 106, citing to Dkt. 9-7, Pg ID 289-96, 354-61).  This was in error.  *See Hensley v. Comm'r of Soc. Sec.*, 2011 WL 4406359, at *1 (E.D. Mich. Sept. 22, 2011) (remand warranted because ALJ erroneously credited an RFC assessment as having been completed by a physician, as opposed to the non-physician single decisionmaker who wrote it).

Moreover, even if the ALJ did not improperly rely on the opinions of the SDMs as "physician consultants," the lack of any medical opinion on the issue of equivalence is in itself an error requiring remand.  As set forth in *Stratton v. Astrue*, — F. Supp.2d —; 2012 WL 1852084, *11-12 (D.N.H. May 11, 2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for
> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of the facts, an administrative
> law judge ... is not bound by a finding by a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding
> policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the
> issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the
> record as expert opinion evidence and given appropriate
> weight*.

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical

judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20

C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir.

Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 12, 2011) (warning

that an ALJ who makes a step-three equivalence determination without

expert-opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence

determinations differently from determinations as to whether an impairment meets

a listing, requiring expert evidence for the former, but not the latter. *Stratton*, 2012

WL 1852084, at *12 (citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D.

Tex. May 23, 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted)).  This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form.  *Stratton*, 2012 WL 1852084, at *12 (citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006 WL 549305, at *3 (D. Me. Mar. 6, 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D .... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question."), *adopted by* 2006 WL 839494 (D. Me. Mar. 30, 2006).  There is no Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff's physical impairments in this record.  (Dkt. 9-3, Pg ID 164-65 (indicating ".*SDM NO-DR*").

The great weight of authority[2] holds that a record lacking any medical advisor opinion on equivalency requires a remand.  *Stratton*, 2012 WL 1852084, at

---

[2] In *Stratton*, the court noted that a decision from Maine "stands alone" in its determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *Id.* (citing *Goupil v. Barnhart*, 2003 WL 22466164, at *2 n.3 (D. Me. Oct. 31, 2003).

*13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. Apr. 14, 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record), *adopted by* 2010 WL 2103637 (W.D. Wash. May 25, 2010); *Wadsworth v. Astrue*, 2008 WL 2857326, at *7 (S.D. Ind. July 21, 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing").  While courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM, *Gallagher v. Comm'r of Soc. Sec.*, 2011 WL 3841632 (E.D. Mich. Mar. 29, 2011) and *Timm v. Comm'r of Soc. Sec.*, 2011 WL 846059 (E.D. Mich. Feb. 14, 2011), the undersigned does not find these cases persuasive. In both cases, the court concluded that because the regulations permitted an SDM to make disability determination without a medical consultant that the ALJ is, therefore, also permitted to do so where the "single decisionmaker" model is in use.  However, nothing about the SDM model changes the ALJ's obligations in the equivalency analysis.  *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka*, 1995 WL 697215, at *2 ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20

25

C.F.R. § 416.926(b)).  Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used.  While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the ALJ's obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases.  Thus, the undersigned's analysis does not alter the SDM model, which leaves the SDM discretion as to whether a medical expert is consulted as to physical impairments.  Rather, the undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which do not otherwise appear to be modified by the SDM model.  *See Byberg v. Comm'r of Soc. Sec.*, 2013 WL 1278500, at *2 (E.D. Mich. Mar. 27, 2013) ("Defendant's attempt to expand the purposes of the SDM model beyond the initial determination of disability and into the proceedings before the ALJ is misplaced."); *Harris v. Comm'r of Soc. Sec.*, 2013 WL 1192301, at *8 (E.D. Mich. Mar. 22, 2013) (a medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated); *Hayes v. Comm'r of Soc. Sec.*, 2013 WL 766180, at *8-9 (E.D. Mich. Feb. 4, 2013), *adopted by* 2013 WL 773017 (E.D. Mich. Feb. 28, 2013); *Maynard v. Comm'r of Soc. Sec.*, 2012 WL 5471150 (E.D. Mich. Nov. 9, 2012) ("[O]nce a

hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence.").

While the undersigned is not necessarily convinced that plaintiff can show that his physical impairments satisfy the equivalence requirements, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. Feb. 6, 2012). The undersigned finds that the lack of an expert medical opinion on the issue of equivalency is problematic and violated the requirements of SSR 96-6p. For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's physical impairments.

### 4.    Plaintiff's Residual Functional Capacity

If, on remand, the qualified medical advisor finds that plaintiff's physical impairments equal a listing, then the ALJ will need to re-evaluate plaintiff's residual functional capacity based on that finding. However, if the qualified medical advisor finds that plaintiff's physical impairments do not equal a listing, then the undersigned finds that the ALJ's RFC is supported by substantial evidence for the following reasons.

The ALJ found that plaintiff had the residual functional capacity to perform

27

a range of unskilled, light work.  (Dkt. 9-2, Pg ID 106-110).  Plaintiff's main

physical complaint is Poland's syndrome, but the ALJ properly noted that

plaintiff's treatment records from the State of Michigan's Department of

Corrections generally reveal complaints about hypertension and GERD

(gastroesophageal reflux disease), but no complaints, limitations or muscle

weakness related to his right upper extremity.  (Dkt. 9-7, Pg ID 298-326).  The

March 2007 consultative internal medicine examination noted a loss of muscle

mass over the right anterior chest wall, but showed full range of motion, muscle

power of 5/5 in all extremities with otherwise normal musculoskeletal and

neurological findings, and concluded that plaintiff was independent of activities of

daily living with no functional limitations.  (Dkt. 9-7, Pg ID 282-88).  A second

consultative examination conducted in January 2009 again noted the absence of the

right pectoral minor and major but showed normal range of motion in plaintiff's

cervical spine, left shoulder, elbows, hips, knees, ankles, wrists and hands, with

reduced range of motion in his lumbar spine and right shoulder.  (Dkt. 9-7, Pg ID

327-32).  The examiner concluded that plaintiff's hypertension was under control,

he had weakness in his right arm and weakness and stiffness in his right shoulder

due to Poland's syndrome, and that he could do light work with his hands and with

his arms.  (*Id.*).  The ALJ further found that the exertional demands of light work

are consistent with plaintiff's testimony that, while incarcerated, he performed

28

librarian duties and porter duties, both characterized as "light duty," and plaintiff testified that he could prepare food and do laundry.  (Dkt. 9-2, Pg ID 107).

With respect to plaintiff's mental impairments, the ALJ noted that the record is "striking for the absence of mental health or educational interventions from any attending source."  (Dkt. 9-2, Pg ID 108).  A consultative psychological examination was conducted by Nick Boneff, Ph.D., in February 2009 and plaintiff was diagnosed with a reading disorder, mathematics disorder, nonspecific verbal learning disability, and mixed personality disorder with antisocial, narcissistic and dependent features.  (Dkt. 9-7, Pg ID 333-38).   Dr. Boneff noted that plaintiff was not currently taking any psychiatric medication, he presented as being in adequate overt touch with reality, was occasionally argumentative, but the mental status exam was generally within normal limits.  (*Id.*).  Testing under the Wechsler Adult Intelligence Scale, Third Edition ("WAIS-III") showed a verbal IQ score of 96, a performance IQ score of 122, and a full scale IQ score of 107 (in the average to superior ranges), and the Wide Range Achievement Test, Third Edition ("WRAT-3") showed standard scores of 105 in reading (indicating the ability to read in the average range at the post high school level) and 83 in arithmetic (indicating an ability to perform math in the low average range at the 6th grade level).  (*Id.*).  Dr. Boneff diagnosed plaintiff with Reading disorder, Mathematics disorder, Nonspecific verbal learning disability, and Mixed personality disorder with

antisocial, narcissistic and dependent features, with a very good prognosis "in terms of capacity to function cognitively in light of his excellent intellectual and academic abilities[.]"  (*Id.*).

A reviewing mental health consultant filled out a Psychiatric Review Technique Form ("PRTF") in March 2009 finding that plaintiff's impairments of Organic Mental Disorder (reading and math disorder, nonspecific verbal disorder) and Personality Disorder (mixed personality disorder) were not severe, and that plaintiff had no restrictions of activities of daily living, mild difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.  (Dkt. 9-7, Pg ID 339-52). The ALJ, however, did not agree with the mental health consultant's analysis and found, based on his review of the record evidence, that plaintiff's cognitive, affective and characterological disorders resulted in "severe" impairments, and that the impairments resulted in mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation.  (Dkt. 9-2, Pg ID 105-06).

The ALJ also noted that plaintiff began outpatient treatment in October 2009 with Team Mental Health Services, complaining of anxious mood, irritable behavior, auditory hallucinations, and paranoid thinking.  (Dkt. 9-2, Pg ID 108-09).

Treatment notes reveal that plaintiff was oriented, displayed a normal, logical and coherent thought process, had intact judgment, average intelligence, fair to good insight, with no delusional thought or psychosis, and he was diagnosed with Bipolar 1 Disorder, most recent episode Moderate, and prescribed various medications.  (Dkt. 9-8, Pg ID 363-54).  Plaintiff stated that his medications were working for him and generally reported no side effects from his medications, and by January 2010, his case manager noted a "huge improvement" in plaintiff's affect since he began taking his medication.  (*Id.*).

The ALJ further noted plaintiff's daily activities, including taking classes at community college, and found that plaintiff is limited to the sustained performance of work that requires only understanding, remembering, or carrying out simple instructions, that plaintiff should avoid jobs requiring a good deal of reading and should be limited to brief and superficial contact with supervisors, coworkers, and members of the public.  (Dkt. 9-2, Pg ID 109-10).  The RFC and the limitations in the hypothetical question posed to the vocational expert were consistent with the record evidence and thus supported by substantial evidence.  Plaintiff simply fails to explain why the ALJ should have included additional restrictions in either the RFC finding or hypothetical question or what these additional restrictions should be.

### 5.    Vocational expert testimony

31

The vocational expert opined that an individual with plaintiff's vocational profile and the residual functional capacity found by the ALJ could perform the jobs of laundry sorter (12,300 jobs in the Detroit area) and bench hand assembler (14,900 jobs).  (Dkt. 9-2, Pg ID 157-58).  The vocational expert further testified that if plaintiff's right upper extremity was useless, plaintiff could still perform the job of escort driver (15,600 jobs).  (*Id.* at 158-60).  The ALJ reasonably found that, based on the vocational expert's testimony, plaintiff was not disabled because a significant number of jobs exist in the national economy that plaintiff could perform.

Plaintiff complains generally that there is a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"), but fails to identify any such conflict.  Plaintiff's counsel had the opportunity to obtain more detail or clarification at the time of the hearing if needed, but chose not to do so, and thus plaintiff waived any argument he may otherwise have had regarding the VE's testimony.  *See Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. Appx. 163, 168-69 (6th Cir. 2009) ("Even if there were an inconsistency, the plaintiff has not pointed to any authority that the ALJ erred in his findings based on the VE's testimony, which went unchallenged by the plaintiff until after the ALJ issued his decision.").  The undersigned notes upon review of the hearing transcript, however, that the ALJ failed to fulfill his duty under Social Security Ruling 00-4p, which requires

32

the ALJ to "inquire, on the record, as to whether or not there is such consistency"
between the VE's testimony and the DOT, and, when there is an apparent
unresolved conflict, the ALJ is required to elicit a reasonable explanation for the
conflict before relying on the VE evidence to support a determination about
whether a claimant is disabled.  SSR 00-4p, 2000 WL 1989704.  (Dkt. 9-2, Pg ID
156-60).  Although not definitive, courts in this circuit have generally concluded
that the ALJ's failure to inquire about consistency with the DOT is not reversible
error unless a potential conflict actually exists, thereby undermining the reliability
of the VE's testimony and the ALJ's ability to rely upon it.  *See Goulette v.
Comm'r of Soc. Sec.*, 2013 WL 2371695, at *11 (E.D. Mich. May 30, 2013)
(collecting cases).  However, as this case is being remanded on other grounds, on
remand, the ALJ is directed to comply with SSR 00-4p and inquire as to the
consistency between any testimony obtained from a vocational expert and the
DOT.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that
plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's
motion for summary judgment be **DENIED** in part, that the findings of the
Commissioner be **REVERSED** in part, and that this matter be **REMANDED** for
further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

34

Date: June 20, 2013                    s/Michael Hluchaniuk
                                       Michael Hluchaniuk
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on June 20, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Vanessa Miree Mays, AUSA, and Jason Scoggins, Social Security Administration, and I certify that I have mailed by United States Postal Service the foregoing pleading to the plaintiff, a non-ECF participant, at the following address: Alfred Eugene Osley, 13725 LaSalle Blvd, Apartment 112, Detroit, MI 48238.

                                       s/Tammy Hallwood
                                       Case Manager
                                       (810) 341-7850
                                       tammy_hallwood@mied.uscourts.gov

35